UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MELISSA WILLIAMS,
o.b.o. K.H.,

                Plaintiff,                                Hon. Wendell A. Miles

v.                                             Case No. 1:05 CV 341

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____/


## REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review the final decision of the Commissioner of Social Security that Plaintiff is not

entitled to Supplemental Security Income under Title XVI of the Social Security Act. Section 405(g)

limits the Court to a review of the administrative record, and provides that if the Commissioner's

decision is supported by substantial evidence, it shall be conclusive.

       The Commissioner has found that Plaintiff is not disabled within the meaning of the

Act.  Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit

proposed findings of fact and recommendations for disposition of social security appeals, the

undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making his decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The

2

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.


## PROCEDURAL POSTURE

Plaintiff was born on September 26, 1995.  (Tr. 51).  On April 7, 2003, Plaintiff's mother submitted an application for benefits on behalf of Plaintiff, asserting that because of a learning disability, Plaintiff has been disabled since February 1, 1997.  (Tr. 51-53, 56).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 24-50).  On September 29, 2004, Plaintiff and his mother appeared before ALJ James F. Prothro, II, with testimony being offered by Plaintiff, Plaintiff's mother, and medical expert, Dr. Thomas Ippel.  (Tr. 167-204).  In a written decision dated December 21, 2004, the ALJ determined that Plaintiff was not disabled as defined by the Act.  (Tr. 15-23).  The Appeals Council declined to review this determination, rendering it the Commissioner's final decision in the matter.  (Tr. 4-7).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g).


## MEDICAL BACKGROUND

On March 17, 2003, Plaintiff participated in a psychoeducational evaluation, conducted by school psychologist, Andrea Carlson, to determine whether Plaintiff qualified for special education services.  (Tr. 98-102).  The results of the evaluation revealed that Plaintiff's "overall cognitive functioning [was] in the Low range."  (Tr. 102).  Plaintiff's "[a]cademic skills ranged from well below average to average" and his reading comprehension skills were

3

"significantly lower than his cognitive skills." Carlson concluded that Plaintiff qualified for special education services. *Id.*

On April 21, 2003, Plaintiff's first grade teacher, Kathy Watkins, completed a questionnaire regarding Plaintiff's level of functioning. (Tr. 68-75). Watkins reported that Plaintiff's reading, math, and written language skills were at the kindergarten level. (Tr. 68). With respect to his ability to acquire and use information, Plaintiff was evaluated in ten separate categories. (Tr. 69). According to Watkins, Plaintiff experienced a "serious" problem or a "very serious" problem in 9 of the 10 categories. *Id.* Plaintiff was assessed in 13 categories relative to his ability to attend and complete tasks. (Tr. 70). Watkins reported that Plaintiff experienced a "serious" problem in two categories, an "obvious" problem in four categories, a "slight" problem in four categories, and "no problem" in three categories. *Id.* Plaintiff was also assessed in 13 categories relative to his ability to interact and relate with others. (Tr. 71). Watkins reported that Plaintiff experienced a "serious" problem in one category, an "obvious" problem in one category, a "slight" problem in seven categories, and "no problem" in four categories. *Id.* Finally, Watkins reported that Plaintiff experienced "no problems" in the following areas: (1) moving about and manipulating objects and (2) caring for himself. (Tr. 72-73).

On April 23, 2003, Linda Rodriguez, a special education teacher, reported that she "just started working with" Plaintiff. (Tr. 104-05). Rodriguez reported that Plaintiff "needs practice saying [and] writing his ABCs and he is working on reading and spelling." (Tr. 105). She also noted that Plaintiff was "very cooperative and tries hard." *Id.*

On May 6, 2003, Plaintiff participated in a consultive examination conducted by Licensed Psychologist, Wayne Kinzie, Ph.D. (Tr. 106-11). Plaintiff's mother reported that Plaintiff

4

did not experience any "failure to thrive problems." (Tr. 106). The results of a mental status examination were unremarkable. (Tr. 108-10). Dr. Kinzie concluded that Plaintiff suffered from: (1) mild reading disorder, (2) mild expressive language disorder, and (3) mild phonological disorder. (Tr. 110). Plaintiff's GAF score was reported as 63. *Id.*

On June 23, 2003, Plaintiff participated in a consultive examination conducted by Speech and Language Pathologist, Mary Jo VanBuskirk. (Tr. 112-16). Plaintiff's mother reported that Plaintiff experiences difficulty speaking, a problem which does not improve with repetition. (Tr. 112-13). She further reported that she can understand only 65 percent of Plaintiff's speech. (Tr. 112).

An examination of Plaintiff's "oral mechanism, structure, and function" revealed such to be "functional for speech production." (Tr. 113). An evaluation of Plaintiff's speech and articulation revealed an age equivalent score of 7 years, 9 months (which correlated to the 68th percentile). Plaintiff "did not have difficulty producing multisyllabic words during spontaneous speech" and his vocal quality was "normal." VanBuskirk reported that Plaintiff's conversational speech was "easy to understand." She concluded that "for those who are familiar with" Plaintiff his "conversational intelligibility" rated as 90 percent for known contexts and 85 percent for unknown contexts. With respect to those who were not familiar with Plaintiff his "conversational intelligibility" rated as 80 percent for known contexts and 75 percent for unknown contexts. VanBuskirk also reported that Plaintiff's conversational intelligibility improved 5-10 percent with repetition. *Id.*

With respect to his receptive language skills, Plaintiff comprehended "simple questions," but scored average to below average on the various receptive language subtests. (Tr.

114).  VanBuskirk concluded that Plaintiff's receptive language skills placed him in the first percentile relative to his peers.  *Id.*  As for his expressive language skills, Plaintiff was able to produce "appropriate length spontaneous utterances," but scored average to below average on the various expressive language subtests.  (Tr. 114-15).  VanBuskirk concluded that Plaintiff's expressive language skills placed him in the seventh percentile relative to his peers.  (Tr. 114).  VanBuskirk recommended that Plaintiff receive "speech and language services to improve his receptive and expressive language skills."  (Tr. 116).

At the administrative hearing, Thomas Ippel, Ph.D., testified that Plaintiff suffered from two impairments: (1) receptive and expressive language disorder, and (2) phonological or articulation disorder.  (Tr. 192-93).  Dr. Ippel concluded that Plaintiff's impairments, whether considered individually or in combination, neither met nor constituted the functional equivalent of any impairment identified in the Listing of Impairments. (Tr. 195). With respect to Plaintiff's ability to function, Dr. Ippel testified that Plaintiff experienced: (1) marked limitations in the area of acquiring and using information, (2) less than marked limitation in the area of attending and completing a task, (3) less than marked limitation in the area of interacting and relating with other people, (4) no limitation in the area of moving about and manipulating or handling objects, (5) no limitation in the area of caring for himself, and (6) less than marked limitation in the area of overall health and physical well-being.  (Tr. 196-97).

6

## ANALYSIS OF THE ALJ'S DECISION

### A.  Applicable Standards

Federal law provides that an "individual under the age of 18" will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3)(C)(i).  To determine whether a child satisfies this standard, the Commissioner must evaluate the claim pursuant to a three-step sequential process.  20 C.F.R. § 416.924.

In the first step, if the ALJ determines that the child is engaged in substantial gainful activity he cannot be found to be disabled.  20 C.F.R. § 416.924(b); *Elam v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003).  If the child is not engaged in substantial gainful activity the analysis proceeds to step two, at which point the ALJ must determine whether the child has a severe impairment or combination of impairments.  20 C.F.R. § 416.924(c); *Elam*, 348 F.3d at 125. If the ALJ determines that the child suffers from a severe impairment, or combination of impairments, the analysis proceeds to step three, at which point the ALJ must determine whether the impairment(s) "meet, medically equal, or functionally equal" one the impairments identified in the Listing of Impairments.  20 C.F.R. § 416.924(d); *Elam*, 348 F.3d at 125.

### B.  The ALJ's Decision

After noting that Plaintiff was not engaged in substantial gainful activity, the ALJ proceeded to the second step of the analysis, finding that Plaintiff suffered from a phonological (articulation) disorder also involving expressive and receptive language, a severe impairment.  (Tr. 18).  At the third step of the analysis, the ALJ concluded that Plaintiff's impairments do not meet

7

or medically equal any impairment identified in the Listing of Impairments detailed in 20 C.F.R.,
Part 404, Subpart P, Appendix 1. (Tr. 18-20). The ALJ further determined that Plaintiff's
impairments do not functionally equal in severity any impairment identified in the Listing of
Impairments. *Id.*

   To determine whether a child claimant suffers from an impairment which is the
functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each
of six domains of functioning described as "broad areas of functioning intended to capture all of
what a child can or cannot do." 20 C.F.R. § 416.926a(a)-(b). To be considered disabled the child's
impairments must result in "marked" limitations in two domains of functioning or an "extreme"
limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning are:

   (i)  acquiring and using information,
   (ii)  attending and completing tasks,
   (iii) interacting and relating with others,
   (iv) moving about and manipulating objects,
   (v)  caring for yourself, and
   (vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

   The ALJ found that Plaintiff experienced marked limitations in his ability to acquire
and use information. (Tr. 20). The ALJ found that Plaintiff experienced less than marked
limitations in his ability to (a) attend and complete tasks and (b) interact and relate with others. (Tr.
20-21). The ALJ further determined that Plaintiff experienced no limitations in his ability to (a)
move about and manipulate objects and (b) care for himself. (Tr. 21). Finally, the ALJ found that
Plaintiff experienced no limitation in his health and physical well-being. *Id.* Accordingly, the ALJ
determined that Plaintiff was not disabled as defined by the Social Security Act.

1.      The ALJ's Decision is Supported by Substantial Evidence

Plaintiff has not challenged the ALJ's determination that he does not suffer from an impairment which meets or medically equals a listed impairment.  Instead, Plaintiff challenges the ALJ's conclusion that his impairments do not functionally equal a listed impairment.

a.      Plaintiff's Ability to Acquire and Use Information

As noted above, the ALJ concluded that Plaintiff experienced marked limitations in his ability to acquire and use information.  Plaintiff counters that he instead experiences "extreme" limitations in his ability to acquire and use information.

A "marked" limitation is defined as one which "interferes seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  Moreover, a "marked" limitation is "more than moderate," but "less than extreme" and is the equivalent of "the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*

An "extreme" limitation is defined as one which "interferes very seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).  It is the equivalent of "the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  *Id.*

Plaintiff asserts that the results of tests he completed on March 17, 2003, provide "overwhelming" evidence of his extreme limitation.  Specifically, Plaintiff asserts that "he scored consistently approximately three standard deviations below the mean."  As Defendant correctly observes, however, there is no evidence to support this assertion.  The test results upon which

9

Plaintiff relies do not indicate how many standard deviations Plaintiff's scores deviated from the mean.  Instead, the results of the evaluation revealed that Plaintiff's "overall cognitive functioning [was] in the Low range."  (Tr. 98-102).  The evaluation further revealed that Plaintiff's "[a]cademic skills ranged from well below average to average" and his reading comprehension skills were "significantly lower than his cognitive skills."  *Id.*  While these results clearly indicate that Plaintiff experiences limitations in this domain, such are not consistent with an "extreme" degree of limitation, but are instead consistent with a "marked" level of impairment.

The medical record does not support the conclusion that Plaintiff experiences "extreme" limitations in this particular domain of functioning.  Instead, as the ALJ properly concluded (consistent with Dr. Ippel's testimony), Plaintiff experiences only "marked" limitations in this domain of functioning.  Thus, the Court concludes that there exists substantial evidence to support the ALJ's conclusion that Plaintiff experienced only marked limitations with respect to his ability to acquire and use information.

b.    Plaintiff's Ability to Interact and Relate with Others

The ALJ determined that Plaintiff experienced "less than marked" limitations in his ability to interact and relate with others.  Plaintiff disputes this conclusion, asserting that his poor performance on various language skills tests establish that he experiences "marked" limitations in this domain.

On April 21, 2003, Plaintiff's first-grade teacher assessed Plaintiff in 13 categories relative to his ability to interact and relate with others.  (Tr. 71).  As noted above, Plaintiff experienced a "serious" problem in only one category, an "obvious" problem in only one category,

and either a "slight" problem or "no problem" in the remaining 11 categories.  Plaintiff's teacher also specifically noted that Plaintiff "is not a behavior problem."  *Id.*

As for Plaintiff's language skills, Dr. Kinzie concluded that while Plaintiff suffered from expressive language disorder and phonological disorder, such were only "mild" in severity. (Tr. 106-11).  Moreover, Mary Jo VanBuskirk reported that Plaintiff's speech and articulation abilities placed him in the 68th percentile relative to his peers.  Plaintiff "did not have difficulty producing multisyllabic words during spontaneous speech."  Moreover, his vocal quality was "normal" and his conversational speech was "easy to understand."  *Id.*  In sum, there exists substantial evidence to support the ALJ's conclusion that Plaintiff experienced less than marked limitations with respect to his ability to interact and relate with others.

### c.        Plaintiff Obtained a Full and Fair Hearing

Finally, Plaintiff asserts that the ALJ erred by "not adjourning the hearing due to his mother's obvious inability to comprehend the issues at the hearing, which clearly deprived him of his right to a full and fair hearing."

Disability claimants possess a statutory right to legal representation at administrative hearings.  *See* 42 U.S.C. § 406; 20 C.F.R. § 404.1705; *see also*, *Mandziej v. Chater*, 944 F.Supp. 121, 130 (D.N.H. 1996) (recognizing right to counsel); *Frank v. Chater*, 924 F.Supp. 416, 422-23 (E.D.N.Y. 1996) (same).  While this right is not of constitutional magnitude, *see Mandziej*, 944 F.Supp. at 130; *Frank*, 924 F.Supp. at 422, the importance of legal representation in administrative proceedings has long been recognized.  *See Goldberg v. Kelly*, 397 U.S. 254, 270-71 (1970) (in an administrative proceeding, "[c]ounsel can help delineate the issues, present the factual contentions

in an orderly manner, conduct cross-examination, and generally safeguard the interests of the recipient"). Claimants must be informed of this right and, furthermore, any waiver of this right must be made knowingly and voluntarily. *See*, *e.g.*, *Duncan v. Sec'y of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986).

    i.  Plaintiff's Mother Properly Waived Plaintiff's Right to Counsel

    With respect to a claimant's right to be notified of the right to counsel, the Social Security Act was amended in 1989 to provide that

> The Secretary shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Secretary. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.
>
> 42 U.S.C.§406(c).

    Prior to the enactment of this amendment, it was recognized that an effective notification of the right to counsel must include "an explanation of the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court approval of the fees." *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991); *see also*, *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.1 (11th Cir. 1985); *Vance v. Hackler*, 579 F.Supp. 318, 321 (N.D.Ill. 1984).

    While the addition of § 406(c) might be interpreted as an attempt to specifically enumerate the contents of an effective notice, it has not been so interpreted. Courts have instead continued to follow the pre-amendment standard, in effect concluding that § 406(c) represents only

a portion of the information which must be conveyed to claimants regarding their right to counsel. *See*, *e.g.*, *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Frank*, 924 F.Supp. at 423-24; *Schultz v. Sullivan*, 1993 WL 47873 at *5-6 (N.D.Ill., Feb. 23, 1993).

Notification can be provided either orally or in writing. *See, e.g., Frank*, 924 F.Supp. at 426. Plaintiff's mother was notified in writing of Plaintiff's "right to representation." (Tr. 32-33). She was informed that (a) Plaintiff was entitled to legal representation, (b) that such assistance may be beneficial, (c) that he may qualify for free representation, and (d) that if Plaintiff employed an attorney on a contingent fee basis there existed a limitation on attorneys' fees to twenty-five percent of past-due benefits (which must also be approved by the court). (Tr. 32-40). Plaintiff's mother was provided with the names and contact information of several organizations which could assist her in locating an attorney. (Tr. 35). She was also provided with the names and contact information of 13 organizations which provide free legal services to individuals unable to pay for legal representation. (Tr. 35). Plaintiff's mother nonetheless declined to obtain representation and opted to proceed with the administrative hearing without the benefit of counsel. (Tr. 50).

At the outset of the administrative hearing, the ALJ questioned Plaintiff's mother regarding whether she wanted to proceed without counsel. (Tr. 169-72). Plaintiff again indicated that she wanted to proceed without representation. (Tr. 172). The Court concludes that Plaintiff's mother was sufficiently informed of Plaintiff's right to counsel and that she knowingly and voluntarily waived that right.

b.       The ALJ Fully Developed the Administrative Record

Even if the Court were to find that Plaintiff's mother did not knowingly and voluntarily waive Plaintiff's right to counsel in this matter, such does not by itself render infirm the ALJ's decision.  Plaintiff must further demonstrate that his lack of counsel prejudiced his attempt to obtain benefits.  *See Webb v. Finch*, 431 F.2d 1179, 1179-80 (6th Cir. 1970); *Binion*, 13 F.3d at 245; *Frank*, 924 F.Supp. at 427 (citing to *Evangelista v. Sec'y of Health and Human Services*, 826 F.2d 136, 142 (1st Cir. 1987)); *Vaile v. Chater*, 916 F.Supp. 821, 829 (N.D.Ill. 1996); *Bryk v. Sec'y of Health and Human Services*, 1992 WL 176990 at *3 (N.D.Ohio, Mar. 16, 1992) (citing to *Webb v. Finch*, 431 F.2d 1179 (6th Cir. 1970)).  In this particular context, the most common form of prejudice is a failure by the ALJ to fully develop the administrative record.[1]  *See*, *e.g.*, *Binion*, 13 F.3d at 245; *Frank*, 924 F.Supp. at 427; *Vaile*, 916 F.Supp. at 829.

In every administrative proceeding, regardless whether the claimant is represented, the ALJ has a duty to develop the factual record upon which his decision rests.  *See*, *e.g.*, *Osburn v. Apfel*, 1999 WL 503528 at *7 (6th Cir., July 9, 1999) ("the responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge"); *Echevarria v. Sec'y of Health and Human Services*, 685 F.2d 751, 755 (2nd Cir. 1982) (given the non-adversarial nature of a benefits proceeding, the ALJ "must himself affirmatively develop the record").

When a claimant appears without benefit of counsel, however, the ALJ shoulders "a special duty" to "fully develop the record."  *Lashley v. Sec'y of Health and Human Services*, 708

---

[1]  It is important to note that failure by the ALJ to fully develop the administrative record is, by itself, sufficient grounds upon which to overturn the ALJ's decision.  *See*, *e.g.*, *Lashley*, 708 F.2d 1948.  Thus, even were it to later be determined that Plaintiff validly waived her right to counsel, such has no impact on the determination as to whether the ALJ satisfied his obligation to fully develop the factual record below.

14

F.2d 1048, 1051 (6th Cir. 1983); *see also*, *Duncan*, 801 F.2d at 856.  This duty arises from the remedial nature of the Social Security Act, as well as the recognition that "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge." *Lashley*, 708 F.2d at 1051 (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).

To satisfy this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052 (citations omitted).  Because this assessment is not readily amenable to the application of bright line tests, whether the ALJ has satisfied this special duty is to be determined on a case-by-case basis. *See Osburn*, 1999 WL 503528 at *7 (citation omitted).

While there does not exist a bright line test to apply in such circumstances, courts have articulated several concerns relevant to this determination.  First, reversal of the ALJ's decision is not warranted simply because an attorney would have better developed the record.  Instead, "the key inquiry is whether the administrative law judge fully and fairly developed the record through a conscientious probing of all relevant facts." *Rowden v. Chater*, 1996 WL 294464 at *1 (6th Cir., June 3, 1996).  Also, the ALJ is not required, when confronted with an unrepresented claimant, to factually develop matters regarding which he has no notice. *See, e.g., Rowden*, 1996 WL 294464 at *2; *Osburn*, 1999 WL 503528 at *7-8 (6th Cir., July 9, 1999) (a claimant must "support his subjective complaints with objective evidence" before the ALJ can be required to "develop a record" regarding such).

The transcript of the administrative hearing reveals that the ALJ explained the nature of the proceedings (including the relevant legal standard) to Plaintiff's mother.  The ALJ questioned

15

Plaintiff's mother at length regarding Plaintiff's impairments and the manifestations thereof. Plaintiff was questioned by the medical expert, who was in turn questioned at length by the ALJ. At the close of the hearing, the ALJ informed Plaintiff's mother that she would be permitted to submit additional documentation in support of her son's claim.   Moreover, there is no evidence that the ALJ failed to obtain all relevant documentary evidence in support of Plaintiff's claim.   In sum, the ALJ fully and fairly developed the record in this matter.   Thus, the Court finds that this particular claim is without merit.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.   Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  August 1, 2006                              /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge